IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>WESLEY DALLAS AYERS,<br><br>Defendant. | Case Number: 8:18-CR-389-001<br><br>**DEFENDANT'S MOTION FOR VARIANCE AND SENTENCING MEMORANDUM** |

## MOTION FOR VARIANCE

Now comes the Defendant, Wesley Dallas Ayers, by and through his undersigned counsel, and moves this Honorable Court for a variance below the recommended guideline range of imprisonment as set forth in the presentence report. Paragraph 81 of the presentence report recommends a guideline range of Life imprisonment. Defense counsel filed objections to the guideline calculation. Statutorily, Count 2 carries 10 years consecutive to any other count. Count 3 also carries 10 years consecutive. Any variance that the Court may grant applies to Count 1. The relevant provisions of 18 U.S.C. § 3553(a) justify a variance in this case.

## SENTENCING MEMORANDUM

The Defendant further submits and hereby incorporates the following Sentencing Memorandum in support of his motion for variance.

### BACKGROUND

Wesley Dallas Ayers (hereinafter referred to as Dallas) was born on January 18, 1991, in Greenville, South Carolina, and is currently 27 years old. He has resided his entire life with his parents in a rural part of Anderson County. He has never married and does not have children.

1

# **LAW**

The Court has broad discretion in terms of imposing a sentence in criminal cases. In *United States v. Booker*, the United States Supreme Court explicitly held that the United States Sentencing Guidelines are merely advisory. 543 U.S. 220 (2005). While District Courts must consult these guidelines when sentencing a defendant, the Courts likewise are bound to follow the provisions of 18 U.S.C. § 3553 *United States v. Green*, 436 F.3d 449 (4th Cir. 2006). The guidelines must be considered first, but they may be rejected based on other factors such as the need for the specific sentence to fulfill the statutory purposes of sentencing.

Title 18 U.S.C. § 3553(a) directs the Court to impose "a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing enumerated in § 3553(a). These factors are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established by under the sentencing guidelines;

(5) any pertinent policy statement issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7).

When sentencing offenders, the Court considers all of the above factors.

## ARGUMENT

### I. THE COURT MUST CONSIDER THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

*The Nature and Circumstances of the Offense*

The offense conduct is summarized in paragraphs 8-31 of the presentence report (PSR). The Defendant assembled and placed destructive devices by the roadside in rural Anderson County. As outlined in the PSR, between January 24, 2018, and February 24, 2018, the Defendant placed three devices with live explosives, and three "hoax" or non-live devices, for a total of six devices. He was charged after an extensive investigation by numerous law enforcement agencies. The investigation included numerous interviews including interviews of two separate sources of information. Although some of the information given by one of the sources is disputed, their information ultimately furthered the investigation and helped lead to the Defendant's arrest.

*The History and Characteristics of the Defendant*

The PSR provides a factual summary of the actions and events precipitated by Dallas Ayers. His personal background and addiction that was the main driver of his aberrant behavior warrants closer examination by the Court. His middle-childhood and early adolescence reveal a sad history of social isolation, anxiety, depression, and early on-set alcohol, marijuana, and methamphetamine addiction. Even more tragic, is the fact that the Defendant's own mother, Tammy Ayers, introduced both he and his sister (Samantha Ayers), to alcohol and illegal drugs,

including methamphetamine. Dallas's mother introduced him to methamphetamine when he was approximately 12 years old which coincides with his parents' separation shortly thereafter. In his own words, as revealed after at a debriefing with the FBI and other investigators, "Smoking methamphetamine with my mother at the breakfast table was as routine as morning coffee and cigarettes is for some other families."

Dallas's addiction began at the critical developmental stage of early adolescence. Most parents worry persistently about their children's peer groups and influences and pray that their kids will never experiment with illegal drugs. Instead, Dallas's methamphetamine addiction was fueled and encouraged by his mother. This defies logic and can never be explained or understood. It is a glaring example of child neglect. His addiction persisted and escalated until his arrest for the instant offense.

The Defendant underwent a Forensic Mental Health Evaluation from June 14, 2018, through July 24, 2018. Therein Dallas revealed that his mother consumed alcohol during her pregnancy and that he had difficulties learning to talk. Beyond that, he appeared to meet all other developmental milestones of early childhood (United States Federal Bureau of Prisons Forensic Report, Page 2: Developmental History, September 7, 2018). Further, the Forensic Report diagnosed the Dallas with Alcohol, Amphetamine, Cannabis Use Disorder, and Borderline Intellectual Functioning (United States Federal Bureau of Prisons Forensic Report, Page 6: Diagnostic Impression, September 7, 2018). This is no surprise given the Defendant's background.

### *Lack of Education and Resultant Social Isolation*

The Defendant's mother withdrew him from Starr Elementary School after the 5th grade. Her plan was to home-school him. She completely failed follow-through. Half-way through the 6th grade, Dallas's parents separated, and no one reenrolled him in school or took responsibility for

4

his education. He continued to live with his father.

By withdrawing from school at such an early age, Dallas did not have any friends within his peer group. He did interact some with his older cousins but remained at his father's rural property with nothing to occupy his days. He didn't read, play or otherwise interact with anyone else from his age group. He did not develop hobbies. Social isolation persisted through the years. He was never provided the opportunities to participate in peer-group play, sports, school, dances, or other typical socializing events that could have and should have benefitted his personality and social development. Instead, he was quickly addicted and smoked methamphetamine and abused alcohol while left on his own at home while his father worked.

Around age 14, Dallas began to help his father in his heating and air conditioning business. He was very limited in what he could do or learn at such an early age. Assisting his father is the only employment he reported (PSR ¶ 74). As an adult, he earned approximately $400 per month.

*Methamphetamine Addiction*

The Court is well aware of the pernicious effects of methamphetamine upon society. A great number of criminal defendants that appear before the Court can be associated with some form of addiction. Twenty years ago, crack cocaine ravaged many communities and was often seen in federal criminal drug cases. In recent years, high potency methamphetamine is having equally damaging effects upon many aspects of society.

According to the National Institute on Drug Abuse (NIDA), chronic meth users show structural and functional alterations in areas of their brains associated with emotion and memory. This may underlie their vulnerability to experience emotional and cognitive problems.

Long-term methamphetamine use has many negative consequences including addiction. The result is characterized by compulsive drug seeking and use accompanied by functional and

molecular changes in the brain. Users build tolerance to the methamphetamine's pleasurable effects and require higher drug amounts with more frequency. Some addicts can only feel pleasure under the effects of the drug. Chronic addicts may exhibit symptoms such as intense anxiety, confusion, insomnia, and violence. Chronic addiction may display a number of psychotic features, including paranoia, delusions, and hallucinations (National Institute on Drug Abuse. DrugFacts: (2014)).

### *Events leading up to Commission of the Instant Offense*

Dallas met his girlfriend, Victoria Babb around 2015. It was his first and only romantic relationship. The couple did not know each other very well before she moved in with him. She lived in Florence, South Carolina, and they met on an internet site. The relationship was problematic for many reasons. Dallas had no prior relationship experience. He was heavily using methamphetamine and alcohol and because of such, the relationship quickly became volatile.

Dallas became severely depressed and anxious. He hated his life. He hated the addiction that has consumed him since he was a 12-year-old boy. Dallas and Victoria were engaged but on the verge of separating. The prospect of losing his girlfriend seemed to be more than he could bear. It is within this backdrop, that Dallas Ayers, fueled by much hurt and anger made the terrible decisions that followed. Between January 24, 2018, and February 24, 2018, he constructed and placed six devices (three live and three hoax) in and along the roadside of rural Anderson County.

Dallas placed these devices in very rural settings. He did so recklessly and while binging on methamphetamine. In fact, he had been awake for approximately five days prior to his arrest for the instant offense. His illogical motive was to strike back at methamphetamine dealers in Anderson that lived near him, some of whom were his suppliers. All the devices were placed within relative proximity of his residence. The farthest device was 2.21 miles from his home and the

nearest was 0.2 miles, literally just up from the end of his own driveway.

The Defendant could have placed the devices in more populated areas such as schools, churches, or government buildings. Fortunately, he did not do so. The institutions of government were never his target. Instead, although his thinking was convoluted and wrong, he used the devices to lash out at the methamphetamine suppliers that were all in close proximity of his own residence.

### *Islamic Inspired Terrorism*

Dallas Ayers is not an Islamic inspired terrorist. He is certainly guilty of creating much fear within the Anderson County community because of his actions. His terrible decision to strike out at what he believed to be methamphetamine suppliers created the circumstances in which he currently finds himself. He did everything he could to make the devices appear to be the work of Islamic Terrorists. Within the devices he wrote notes, used photos of the Islamic State flag, and employed all the well-known rhetoric including references to the Islamic State and Al 'Qaeda. Part of his scheme was to push all the right buttons to garner media attention and provide a diversion. In his mind, he thought that he was creating a great diversion. He believed that nearby drug dealers would be too afraid to sell drugs if they thought an Islamic terrorist was placing destructive devices nearby. He believed rightly or wrongly that devout Muslims forbid drinking alcohol and drug use. His thought-process is reflective of his deprived background; a severely troubled individual with no more than a 5th grade education.

The Defendant previously interested in the Islamic faith. He had interest in many of the world's major religions. He thought that a rigid religious structure could help stop using drugs. He never practiced Islam. He eventually lost interest in it and reported that it was too strict. He is the kind of individual that could be manipulated by a wide variety of people given his background and

especially his personal isolation and lack of formal education. This caused great concern to the FBI and was investigated thoroughly as the case progressed.

**II.     TITLE 18 U.S.C. § 3553(A) DIRECTS THE COURT TO IMPOSE "A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY" TO COMPLY WITH THE PURPOSES OF SENTENCING ENUMERATED IN § 3553(A).**

*The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment for the Offense*

One of the most difficult decisions that any court faces is the determination of what sentence to impose. The Government is seeking a sentence of 40 years. A 40-year sentence is more than necessary to comply with the sentencing objectives of §3553(a). The Defendant is 27 years old. If sentenced as the Government recommends, it is in essence akin to a Life sentence. Assuming he would serve 85 percent of a 40-year sentence he would be in his 60's upon release. The sentencing objectives can be fully accomplished by a substantially lesser sentence than 40 years.

The Defendant committed a foolish series of crimes. The seriousness of the offense is accounted for by the fact that he must serve a minimum of 20 years. Furthermore, the 20-year sentence must be achieved by two 10-year sentences run consecutively. A just punishment will promote respect for the law and at the same time allow for rehabilitation of the offender.

*To afford adequate deterrence to criminal conduct;*
*To protect the public from further crimes of the defendant*

Individual and societal deterrence are important related sentencing objectives. It is unknowable what specific effect a particular sentence may have on anyone that may be contemplating a similar crime as Dallas committed. A sentence of incarceration could deter similarly minded individuals if they are guided by logic and self-interest. As previously written,

this Defendant committed the instant offense after years of familial neglect, and methamphetamine addiction. Individual deterrence is more readily predictable.

After Dallas was returned from his mental health evaluation and after having previously denied his guilt, he fully admitted his culpability. He was fully debriefed by the FBI and others. He has been in custody since his arrest on March 3, 2018. For the first time since he was 12 years old he is free from the influence of substance abuse. Detoxification from methamphetamine has allowed him to think clearly about the wrongs he committed. He would argue that he is deterred from ever using drugs again or committing any type of crime again. Protection to the public for future crimes presumes that the Defendant will commit additional crimes at some date at least 20 years into the future. He has no criminal history and had never been arrested prior to his arrest for the instant offense. His lack of criminal history certainly indicates that he is unlikely to reoffend.

***To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.***

Dallas is going to spend a large part of his adult life incarcerated. He needs educational and vocational training as well as drug treatment and mental health treatment. His IQ was measured at 70, which is considered borderline intellectual functioning (United States Federal Bureau of Prisons Forensic Report, Page 2: Developmental History, September 7, 2018). An IQ of 69 indicates mental retardation. The Defendant asks the Court to recommend that he be sent to the Federal BOP facility at Butner, North Carolina, in order to address his mental health needs. He further asks the Court to recommend ongoing drug treatment while incarcerated to include the BOP's Residential Drug Abuse Program (RDAP).

## **CONCLUSION**

Wesley Dallas Ayers is 27 years old and faces long-term incarceration. His advisory guidelines as calculated in the presentence report call for Life imprisonment. Objections were filed

to the guideline calculations on December 28, 2018. The Government seeks a sentence of 40 years. He is statutorily required to serve a minimum of two 10-year sentences to run consecutive to each other.

This offense was committed by a young man whose life truly existed at the margins with little semblance of normalcy. His social isolation fueled by methamphetamine addiction certainly helped set the stage for bad the things to come.

He offers no excuses for his actions. He knows that his crime affected his entire community in a tragic way. He is truly thankful that no one suffered serious injury.

He asks the Court to consider all of the mitigating circumstances in his background as well as information that will be expanded upon by the undersigned at sentencing.

Respectfully Submitted,

/s/ Ryan L. Beasley
Ryan L. Beasley, #9162
Ryan L. Beasley, P.A.
416 East North Street
Greenville, SC 29601
T: (864)679-7777  F: (864)672-1406
rlb@ryanbeasleylaw.com

January 17, 2019
Greenville, SC